# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

ROGER KIGHT, )
)
        Plaintiff, )
)
v. ) Case No. 04-3165-CV-S-FJG
)
AUTOZONE, INC., )
)
        Defendant. )

# ORDER

Currently pending before the Court is defendant's Motion for Judgment as a Matter of Law (Doc. # 75) and plaintiff's Motion for Attorney Fees, Costs and Other Costs Expended (Doc. # 78).

## I. BACKGROUND

Plaintiff filed his Complaint against defendant on May 6, 2004, alleging Age Discrimination and Retaliation. On February 23, 2006, the Court granted summary judgment on plaintiff's retaliation claim, but denied summary judgment on the age discrimination claim. Trial was held on April 3 - 6, 2006. On April 6, 2006, the jury returned a verdict in plaintiff's favor. The jury awarded plaintiff $110,500.00 on his age discrimination claim and also determined that the defendant's conduct was willful, which doubled the amount of the award.

## II. DISCUSSION

**A. Motion for Judgment as a Matter of Law**

Defendant filed a Motion for Judgment as a Matter of Law or in the Alternative Motion for New Trial. Defendant submits that the Court should grant the motion because the jury verdict is not supported by the evidence. Specifically, Auto Zone

states that the Court erred in 1) excluding a corrective action report issued to plaintiff on September 2, 1998, for the same conduct for which plaintiff was terminated; 2) erred in excluding testimony concerning termination notices for four employees who worked in Auto Zone's Oklahoma City region and 3) erred in submitting the willfulness instruction to the jury.

In <u>Dominic v. Devilbiss Air Power Co.</u>, No. 05-5016, 2006 WL 2243765 (W.D.Ark. Aug. 4, 2006), the Court stated:

> A motion for JAML should only be granted if the nonmoving party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue. Fed.R.Civ.P. 50(a)(1). A party seeking to overturn a jury verdict based on the insufficiency of the evidence faces an onerous burden. . . . A JAML is proper [o]nly when there is a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party. . . . In evaluating a motion for JAML, the court must assume as proven all facts that the nonmoving party's evidence tended to show, give [him] the benefit of all reasonable inferences, and assume that all conflicts in the evidence were resolved in [his] favor.

<u>Id</u>. at *1 (internal citations and quotations omitted).

Auto Zone argues that there was no credible evidence to support the jury's finding that age was a factor in the decision to terminate plaintiff. AutoZone states that the "multiple conspiracies which Plaintiff relied upon to present his case . . . do not constitute credible evidence and this Court should enter judgment as a matter of law in favor of Auto Zone." (Defendant's Suggestions in Support, p. 5).

In opposition, plaintiff states that he produced both direct and indirect evidence of age discrimination which allowed the jury to find that he was terminated because of his age. Plaintiff argues that witnesses Cecil Hall, Ed Powers, Roberta Hodges, Rocky Reid, Christina Chambers and Roger Kight all testified that the Store Manager, Steve

2

Sinor, made repeated references to Kight's age, such as "old man", "old fat fart" and "old fart." Sinor also stated that he "did not like working with old people" and that Roger Kight was "too old to do his job" and was "too old and too resistant to change." Sinor at one time also announced over the store's intercom, "for all you old men over fifty, now is the time for your pee break." Plaintiff also notes that the jury heard testimony that Sinor discovered that Kight was keeping a record of Sinor's actions in a blue notebook. Sinor took possession of the book and called Grant Bagwell, the Regional Human Resources Manager and started an investigation. Jason Greenwood, Sinor's immediate supervisor also knew of the tension between Sinor and Kight and knew that Kight had been keeping a notebook. He was also aware that employees were attempting to set up meetings with him, but he refused to meet with them. Plaintiff also notes that Bagwell came to investigate him at Sinor's request. Bagwell stated that he spoke with Sinor, asked Sinor who he should interview and even took statements from Sinor about Kight. Additionally, plaintiff notes that when Bagwell was informed that another employee overheard Sinor threaten to fire plaintiff, he refused to investigate the allegation. Plaintiff also notes that Auto Zone's own witnesses admitted that the position held by Rocky Reid, the younger employee who replaced plaintiff, was no longer necessary and "the company was just waiting for an opportunity to move him to another position." Plaintiff argues that by firing him, this opened up a position for Rocky Reid.

Plaintiff states that the jury simply chose not to believe that Auto Zone fired Kight for a legitimate non-discriminatory reason. Rather, the jury weighed the evidence, assessed the credibility of the witnesses and found that Auto Zone's reasons for termination were pretextual. The Court agrees. The evidence was clearly susceptible of multiple interpretations, there were disputed issues of fact, but the jury chose to

3

believe plaintiff's version of the facts. As noted above, "JAML is proper only when there is a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party." Dominic, Id. at *1. In the instant case, the Court finds that there were more than sufficient facts to support the jury's conclusion that Kight was terminated because of his age.

### B. Motion for New Trial

Alternatively, Auto Zone moves the Court for a new trial on the basis of three evidentiary rulings: 1) exclusion of a Corrective Action Report that plaintiff received in 1998, 2) exclusion of the termination notices for four other employees and 3) submission of the instruction on willfulness. "A motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure should only be granted if the jury's verdict was against the great weight of the evidence so as to constitute a miscarriage of justice." Dominic, Id. at *2.

### 1. Corrective Action Report

Auto Zone argues that the exclusion of the September 2, 1998 Corrective Action Report was reversible error. The Court excluded this report because there was no evidence that Auto Zone's decision makers had relied upon it in deciding to terminate plaintiff. Plaintiff's counsel objected when Auto Zone attempted to question plaintiff about the report. During a bench conference the following exchange took place:

Mr. Powell: Mr. Bagwell testified he didn't look at any corrective action reviews at all. It wasn't part of his investigative file, and it didn't have anything to do with his termination.

Mr. Christy: Well, Mr. – the two people that made the decision haven't testified yet. This is his employment history, Your Honor. He was specifically warned about the kind of conduct he was terminated for. I'm certainly entitled to get into that.

Mr. Powell: From four years earlier? It wasn't part of the investigative file.

The Court: Look, the only possible relevance that I can see with regard to this is perhaps the animosity he had toward Mr. Sinor to begin with that carried on –

Mr. Powell: Mr. Sinor wasn't there at the time.

Mr. Christy: He was warned about the kind of conduct we terminated him for. This was the warning, and I'm certainly entitled to ask him about that.

. . .

The Court: Are you going to have testimony from these other witnesses that will talk about this in the termination decision?

Mr. Christy: I'm going to ask him about it and I'm going to ask the other witnesses about it.

The Court: It only becomes relevant if it was a factor in his decision.

Mr. Powell: And Mr. Bagwell testified that it wasn't.

The Court: Well, Mr. Bagwell didn't make the decision by himself.

Mr. Christy: I'm going to ask the witness that if he engaged in abusive conduct he could be terminated and did he know that and was he told that in 1998.

The Court: I'm not going to allow you to do that unless you say that factored into the determination decision.

Mr. Christy: I can only say Mr. Harrison is the one that would have access. He doesn't know whether he reviewed it or not before he made the recommendation.

The Court: Then objection sustained.

Auto Zone states that the exclusion of the report was prejudicial to its defense because the Corrective Action form was issued for conduct which was identical to that which resulted in plaintiff's termination. Auto Zone states that the 1998 Corrective Action form was signed by the plaintiff and contradicted his testimony that he had never engaged in that type of conduct. Auto Zone argues that the jury was entitled to know about the previous Corrective Action report and why it was issued. Additionally, Auto Zone argues that the Corrective Action report should have been admitted as it was

5

issued by a manager other than Sinor, and thus further supports Auto Zone's argument that plaintiff's termination was not due to his age, but rather to his conduct. Auto Zone also argues that the Corrective Action report was also critical to the jury's assessment of plaintiff's credibility. Auto Zone states that had the jury known that plaintiff was previously disciplined for the identical conduct for which he was terminated, they could have concluded that his termination was due to the misconduct and not to his age.

Plaintiff states that the 1998 Corrective Action report was issued by another manager, not Steve Sinor, and was issued for comments Kight allegedly made to two subordinates. However, Auto Zone did not call the manager who issued the Corrective Action report as a witness, and no one else from Auto Zone had any information regarding the allegations. Plaintiff also notes that Auto Zone claims to have been prejudiced, but if none of the decision makers relied upon the report in terminating Mr. Kight, the report has no evidentiary value and it does not show any pattern or regular course of conduct regarding Mr. Kight. Rather, it only shows that Kight knew he could be terminated if complaints were made against him.

Decisions regarding the admissibility of evidence during trial are committed to the Court's broad discretion. DiCarlo v. Keller Ladders, Inc., 211 F.3d 465, 467 (8th Cir. 2000). The Court determined that the Corrective Action report was not relevant, because Auto Zone could not show that the report played any part in the decision to terminate plaintiff. Additionally, the Court finds that the relevance of the report is further weakened because it was issued in 1998, over four years before plaintiff was terminated. Accordingly, the Court does not find that the exclusion of the Corrective Action report was erroneous.

**2. Termination Notices**

6

Case 6:04-cv-03165-FJG   Document 84   Filed 09/05/06   Page 6 of 17

Auto Zone also moved to admit the termination notices of four other employees, under the age of forty, who Auto Zone claims were also terminated for the same conduct that plaintiff was. Auto Zone states that this would have compromised plaintiff's prima facie claim of age discrimination, because he would not have been able to show that younger workers were treated any more favorably that he was. Auto Zone states that this would also have supported its claim that Kight was terminated for a legitimate and non-discriminatory reason.

During trial, plaintiff objected to the admission of these termination notices. During a bench conference Auto Zone argued as follows:

Mr. Christy: These are other employees who were terminated for similar reasons and we're here to proffer that –

The Court: During this period of time?

Mr. Christy: Yes, sir, during the same time frame.

The Court: In this same region?

Mr. Christy: Yes, sir.

The Court: And how is that relevant?

Mr. Christy: Well, they claim we terminated the plaintiff because of his age, and I'm going to ask him if these other people were terminated for similar reasons and what their ages were.

The Court: But then we don't have any history about these other employees.

Mr. Christy: We produced this in the case. It's part of his documentation, Your Honor.

The Court: I'm going to sustain the objection.

Later, Auto Zone made an offer of proof on this issue:

Mr. Christy: I sought to question Mr. Bagwell about these and Your Honor sustained an objection and said that we weren't going to go beyond the facts of the present case. It's our position that these documents would support Mr. Bagwell's testimony, were he to testify, that the company has treated the plaintiff, Mr. Kight, no differently than they have

7

treated similarly-situated individuals, and the individuals that I named and are reflected in Defendant's Exhibit 26 were all below the protected age group. Thank you.

The Court: All right. Mr. Powell, your response?

Mr. Powell: Your Honor, our position hasn't changed since we had the hearing at the bench. There was no foundation laid that Mr. Bagwell actually conducted these investigations and that if he started getting into all these, then we would be trying the facts of these four examples that are proffered before the court.

. . .

The Court: I guess the point I'm trying to make here, at least I'm trying to get clarification on, you're saying these names are in a big file. Neither you nor he has specifically cited these specific individuals on a specific witness list; is that correct?

Mr. Powell: Yes, Your Honor.

Mr. Christy: They are not witnesses, Your Honor. They are examples of other individuals –

The Court: If they are known or known to be called, then they could have prepared either during discovery or at trial.

Mr. Christy: Mr. Harrison was questioned about these people at his deposition, Your Honor.

Mr. Powell: No, only one.

Mr. Christy: Two.

Mr. Powell: Okay, two.

The Court: Well, my ruling remains the same.

Mr. Christy: Thank you.

The Court: I assume, since Mr. Bagwell said that these were similarly-situated people, they were in the same region, but not in the same store?

Mr. Christy: They were in the same region but not in the same store.

The Court: Which store were they in?

Mr. Christy: I think two were in Tulsa and one was in Wichita and one was in Oklahoma City.

    Plaintiff notes that Todd Sittig, the decision maker in this case, testified at trial

8

that he had terminated younger employees for the same type of conduct which they allegedly had terminated plaintiff for. Thus, plaintiff argues that Sittig's testimony on this point eliminates any claim of prejudice to Auto Zone.

The Court agrees and finds that there was no error in refusing to admit the termination notices of these other four employees. Especially in light of the fact that Mr. Sittig testified to this fact during his direct examination.

### 3. Submission of Willful Instruction to the Jury

Auto Zone argues that the evidence submitted during trial did not warrant submission of a willful instruction. Auto Zone argues that the evidence showed that plaintiff's termination followed a through investigation into employee complaints concerning plaintiff's misconduct. Auto Zone states that Grant Bagwell conducted an independent investigation and did not involve Mr. Sinor, beyond taking Sinor's statement. Auto Zone argues that there is no evidence that at the time Sittig decided to terminate plaintiff, he knew or showed reckless disregard for the ADEA.

Plaintiff argues that the evidence introduced supported submission of the willful instruction. Plaintiff states that Auto Zone did not train or educate its store managers concerning age discrimination, plaintiff tried to meet with Sinor's immediate supervisor, but was rebuffed. The jury could have believed that the reason given by Auto Zone for firing plaintiff was pretext, especially in light of the conflicting testimony regarding plaintiff's job performance and Auto Zone's assertion that plaintiff had problems with customers and employees. Plaintiff also argues that Sinor's age based animus was made clear to the jury and he was the individual who began the investigation into Kight and had input into the investigation which ultimately led to Kight's termination. Additionally, plaintiff states there was evidence presented that Sinor threatened

9

employees over the age of forty, that if they did not participate in the Kight investigation, they would be fired. Plaintiff argues that given the totality of the circumstances, a reasonable jury could conclude that Sinor and others willfully discriminated against Kight.

In reply, Auto Zone argues that none of the facts cited by plaintiff involve Todd Sittig or Tim Harrison and none of the facts acknowledge that at the time of the event referenced, there had been no claims or allegations of age discrimination by Kight. However, as plaintiff notes in his sur-reply suggestions, "an employer can be liable where the formal decisionmaker is not the person who harbored an unlawful motive to terminate the employee." (Plaintiff's Sur-reply Suggestions, p. 2).

In Spencer v. Stuart Hall Co., Inc., 173 F.3d 1124 (8th Cir. 1999), the Court stated:

> An improperly dismissed employee is entitled to a double recovery, called liquidated damages, if he proves that his employer willfully violated the ADEA. See 29 U.S.C. § 626(b). The standard for proving willfulness is simply whether the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. . . . This showing does not require any heightened quantum or quality of evidence beyond that already established as long as all the evidence satisfies the distinct standard for willfulness. . . . A violation of the ADEA does not require any particular mental state, but the award of liquidated damages under the ADEA does.

Id. at 1129 (internal quotations and citations omitted).

> In reviewing alleged errors in jury instructions, we ask whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury. . . . The district court must instruct the jury on the plaintiff's claims and theories if the theories of law are legally correct, supported by the evidence, and brought to the court's attention in a timely request, but is not bound to give the party's requested instruction.

Moses.Com Securities, Inc. v. Comprehensive Software Systems, Inc., 406 F.3d 1052

10

(8th Cir. 2005)(internal citations and quotations omitted).

The Court finds that the evidence properly supported the submission of the willfulness instruction to the jury. There was evidence that Sinor made age based remarks, Sinor launched the investigation into Kight and he had input into the investigation that ultimately led to Kight's termination. Additionally, there was evidence that Sinor threatened employees if they did not cooperate in the investigation into Kight. There was also evidence that the upper level management did not conduct a thorough investigation into all of the allegations. Therefore, as the instruction was properly supported by the evidence and was correct as a matter of law, the Court finds that it was correctly submitted to the jury. As the Court has determined that the instruction was properly submitted, judgment is hereby entered for $221,000.00 or double the jury's damage award.

For the reasons stated above, the Court finds no basis for defendant's Motion. Therefore, Defendant's Motion Judgment as a Matter of Law or Alternatively for a New Trial is hereby **DENIED** (Doc. # 75).

**C. Motion for Attorney Fees, Costs and Other Costs Expended**

Plaintiff has also filed a Motion seeking Attorney Fees, Costs and Other Costs Expended as Set Forth in Plaintiff's Bill of Costs (Doc. # 78).

**1. Attorney Fees**

Under the ADEA, attorney fees are available because the ADEA incorporates portions of the Fair Labor Standards Act. In addition to any judgment awarded to plaintiff, the Court must allow reasonable attorney fees to be paid by the defendant and costs of the action. 29 U.S.C. § 626 (c)(1).

'[T]he fee applicant bears the burden of establishing entitlement to an

11

award and documenting the appropriate hours expended and hourly rates.' Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates. See Hensley, 461 U.S. at 433, 103 S.Ct. 1933.

Hite v. Vermeer Manufacturing Co., 361 F.Supp.2d 935, 951-52 (S.D.Iowa 2005), aff'd, 446 F.3d 858 (8th Cir. 2006).

> The Eighth Circuit had adopted the guidelines for attorney's fees set forth by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). . . . In assessing attorney's fees, the district court must consider the following twelve factors: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases. . . . . Under the Johnson standards, the minimum award should generally be not less than the number of hours claimed times the attorney's regular hourly rate. . . . This statement, however, [is] not a complete limitation on the district court's discretion to award only reasonable attorney fees, but only a general guideline to be followed in the absence of unusual circumstances.

Id. at 952 (internal citations and quotations omitted).

Plaintiff initially sought attorney fees in the amount of $92,309.50, plus a modest enhancement for trial counsel, based on the notable level of success he claims to have achieved on the Age Discrimination claim. In this case, plaintiff's counsel is seeking $225 per hour for Russell Powell, $175 per hour for attorney Tracy Powell, and $120 for associate Joe Ramboldt. Plaintiff is not seeking any fees for paralegal services. Plaintiff is seeking compensation for 426.20 billable hours.

Defendant objects and states that plaintiff's fees should be reduced because the

12

time records contain duplicative entries evidencing time that Mr. Powell spent representing Ed Powers in the related case Powers v. Auto Zone. Defendant argues that Mr. Powell's hours should be reduced from 426.20 to 341.55, thereby reducing his fees from $92,309.50 to $74,608.25. Plaintiff's counsel states that there is some overlap in the billing records, but that there is no way to successfully parse the billing records to accurately reflect the time spent solely on the Kight matter. Therefore, plaintiff's counsel states that he is willing to accept defendant's proposed reduction with the following exceptions:

• 7/24/04 entry for Tracy Powell should be reduced only to 3.6 hours, instead of 0 hours, as both Russell Powell and Tracy Powell were present and representing Roger Kight.

• 3/30/05 entry for Tracy Powell is not a duplicate entry, and should also not be reduced.

• 4/1/05 entry for Russell Powell should not be reduced, as Mr. Powell would have been required to travel to West Plains, Missouri regardless of the Powers litigation.

• 4/2/05 entry for Russell Powell should not be reduced as the witnesses interviewed that day were relevant only to the Kight case.

• 6/23/05 entry for Russell Powell should not be reduced as it was for the Todd Sittig deposition and related only to the Kight case.

• 3/13/06, 3/14/06 and 3/16/06 entries for Russell Powell were solely related to the Kight case.

Therefore, plaintiff's counsel agrees to reduce his fee request to account for the inevitable overlap between the two cases, but states that the time detailed above, 5.3 hours for Tracy Powell and 16.85 hours for Russell Powell should not be reduced. Therefore, plaintiff has agreed to a reduction of $12,935.00 for an adjusted fee request of $79,374.50.

The Court agrees and finds that the number of hours requested and the hourly

13

rate requested are both reasonable. Therefore, the Court will award plaintiff's counsel $79,374.50 in attorney fees. Plaintiff's counsel also asks for an enhancement of fees in the amount of $7,690.50, based on the results obtained for his client. Defendant opposes the request, arguing that plaintiff was only partially successful, as the Court granted summary judgment on plaintiff's retaliation claim. Defendant argues that because one of the claims was eliminated, plaintiff's fees should be reduced by 25 percent. Defendant also argues that plaintiff's fees should not be enhanced, because enhancement is only permissible "in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Defendant also notes that "[b]ecause this lodestar amount presumably reflects . . . the quality of the representation, and . . . the results obtained, these factors normally cannot serve as independent bases for increasing the fee award above the lodestar amount." In re Apex Oil Co., 960 F.2d 728, 732 (8th Cir. 1992).

While the Court recognizes that plaintiff's counsel obtained a good result for his client, the Court does not find that this case qualifies as a 'rare' or 'exceptional' case that would justify the enhancement of attorney fees. Accordingly, the Court denies plaintiff counsel's request for an enhancement of fees.

### 2. Award of Costs

In addition to attorney fees, plaintiff as the prevailing party is entitled to recover his costs as provided in Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920. 28 U.S.C. § 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

14

(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fee for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under section 1828 of this title.

Plaintiff is seeking a total of $7,134.48 in costs. This represents costs in the following amounts:

Filing Fee: $250.00
Witness Fees: $300.00
Deposition Costs: $4,856.79
Postage & Federal Express Charges: $167.99
Travel Costs: $1,559.70

Defendant objects to certain items in plaintiff's Bill of Costs. For example, defendant states that plaintiff's deposition expenses should be reduced because some of the depositions were used in both the Powers case and the Kight case. Defendant has proposed that the cost of the depositions be prorated between the parties where the depositions were used in both cases and that the full costs be allowed when the deposition was used in only one of the cases. Defendant has proposed that the deposition costs be pro rated for the depositions of Jason Greenwood, Steve Sinor, Grant Bagwell, Rocky Reid, Cecil Hall, Tim Harrison and Todd Sittig and copies of the depositions of Roger Kight and Ed Powers. No costs would be allowed for Libby Rabun's deposition as this was used only in the Powers case. Full costs would be allowed for the depositions of Barry Foote, Joyce Marcak and Billy Willbanks as these were used only in the Kight case. Thus, Auto Zone is proposing that costs be awarded for only $2,518.98.

15

Auto Zone also argues that postage, federal express changes and travel costs should not be recoverable.

> "District courts may award costs to a prevailing party. Fed.R.Civ.P. 54(d). However, such costs must be set out in 28 U.S.C. § 1920 or some other statutory authorization. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 438, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). . . . District courts have substantial discretion in awarding costs under Rule 54(d).

Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 889 (8th Cir. 2006). In Smith, the Court stated that "Section 1920 does not authorize taxing Smith for the defendants' postage and delivery expenses." Id. at 889. The Court recognizes that some courts have allowed travel expenses, but in light of the directive from the Eighth Circuit that costs must be specifically delineated in 28 U.S.C. § 1920, this Court declines to award plaintiff his requested travel expenses. Additionally, the Court notes that "[n]ormally, reasonable out-of-pocket expenses incurred by an attorney which typically would be charged to a fee-paying client are includable in a statutory award of fees. . . . Such expenses routinely include costs for long distance telephone calls, facsimilies, express mail and postage, messenger services, and reasonable travel expenses." Hite, 361 F.Supp.2d at 955 (internal citations omitted). Therefore, the Court also declines to award these items as costs to plaintiff.

Accordingly, the Court hereby **GRANTS** plaintiff's Motion for Fees and Costs as follows:

**Attorney Fees**: $79,374.50

Costs:
| | |
|---|---|
| Filing Fee: | 250.00 |
| Witness Fees: | 300.00 |
| Deposition Expenses | 2,518.97 |
| **Total Costs:** | $ 3,068.97 |

### III. CONCLUSION

16

For the reasons stated above, the Court hereby **DENIES** defendant's Motion for Judgment as a Matter of Law or Alternatively for a New Trial (Doc. # 75) and **GRANTS in PART and DENIES in PART** plaintiff's Motion for Attorney Fees, Costs and Other Costs Expended (Doc. # 78).


Date:  September 5, 2006              **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                 Fernando J. Gaitan, Jr.
                                      United States District Judge